# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | |
| v. | § | No. 4:18-cr-98(6) |
| | § | |
| LUIS FERNANDO ISAZA ARANGO, | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Luis Fernando Isaza Arango's Pro Se Motion for Compassionate Release (the "Motion") (Dkt. #318). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED**.

## BACKGROUND

On June 13, 2018, a Grand Jury for the Eastern District of Texas, Sherman Division, returned a two-count indictment against Defendant and five co-defendants (Dkt. #1). The indictment first charged the defendants with Conspiracy to Manufacture and Distribute Cocaine Intending, Knowing and with Reasonable Cause to Believe that the Cocaine will be Unlawfully Imported into the United States in violation of 21 U.S.C. § 963 ("Count 1") (Dkt. #1 at p. 1). It also charged defendants with Manufacturing and Distributing Five Kilograms or More of Cocaine Intending, Knowing and with Reasonable Cause to Believe the Cocaine will be Unlawfully Imported into the United States in violation of 21 U.S.C. § 959 and 18 U.S.C. § 2 ("Count 2") (Dkt. #1 at p. 2).

On September 3, 2020, Defendant appeared with counsel before United States Magistrate Judge Christine A. Nowak and consented to the administration of his guilty plea (Dkt. #82). Under

a written, non-binding plea agreement, Defendant pleaded guilty to Count 1 of the indictment, a Class A felony (Dkt. #83). On September 8, 2020, the Court adopted the Magistrate Judge's Findings of Fact and Recommendation on Guilty Plea (Dkt. #88), but deferred acceptance of the plea agreement pending review of the presentence report (Dkt. #126). Thereafter, on January 19, 2021, the Court sentenced Defendant to 135 months imprisonment, followed by a 5-year term of supervised release (Dkt. #146 at pp. 2–3). In addition, the Court ordered a special assessment of $100.00 to be paid in full by Defendant (Dkt. #146 at p. 6).

On May 23, 2022, Defendant filed a Motion for Compassionate Release Resentencing and Request for Home Confinement (Dkt. #236), which was denied on May 26, 2022 (Dkt. #237). On August 26, 2022, Defendant filed a Motion for Default Judgment for Independent Medical Screenings (Dkt. #259), which was denied on October 19, 2022 (Dkt. #268). On November 17, 2022, Defendant filed a Motion to Reopen Compassionate Release Proceeding and Motion for Independent Medical Screening and Adequate Treatment (Dkt. #271), which was denied on May 30, 2024 (Dkt. #302). Subsequently, on June 24, 2024, Defendant filed a Motion for Sentence Reduction (Dkt. #309), which was granted by the Court on September 27, 2024, and which reduced Defendant's term of imprisonment to 108 months (Dkt. #316).

On June 3, 2026, Defendant filed the present Motion seeking to further reduce his 108-month sentence under 18 U.S.C. §3582(c)(1)(A), asserting "extraordinary and compelling" reasons based on his current medical condition of liver cirrhosis and estimated life expectancy of approximately 18 months (Dkt. #318 at pp. 4–5). Defendant argues that his life expectancy may be extended from 18 months to 30 months with "proper care," which he claims will be provided by his family if he is immediately released to his home country of Colombia (Dkt. #318 at p. 5). When

applying Good Conduct Time by the Federal Bureau of Prisons ("BOP"), Defendant is expected to be released from custody on January 20, 2027 (approximately nine months from the date of filing) (Dkt. #318-1 at p. 4). By Defendant's own estimation, he will have around 9–21 months to live after he serves the full length of his shortened sentence, absent any compassionate release.

On June 24, 2026, the United States Probation Office noted its opposition to Defendant's request for compassionate release, contending that Defendant failed to exhaust his administrative remedies and that he should not be released due to an active Immigration and Customs Enforcement ("ICE") detainer. Having considered all of Defendant's arguments, the Court now offers the following ruling on Defendant's Motion.

## LEGAL STANDARD

### I. 18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)). "Often referred to as 'compassionate release,' § 3582(c)(1)(A) embodies a rare exception to a conviction's finality." *United States v. Wilson*, No. 1:07-CR-236-MAC-CLS-1, 2024 WL 4267923, at *3 (E.D. Tex. Sept. 23, 2024). The statute gives the Court discretion, under certain circumstances, to reduce a defendant's term of imprisonment. *Id.* The First Step Act of 2018, in part, states:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they

> are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Pub. L. No. 115-391, 132 Stat. 5194, codified as 18 U.S.C. §3582(c)(1)(A).[1]

Instead of defining "extraordinary and compelling reasons," Congress delegated its authority to the United States Sentencing Commission ("Commission") to define the term. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *see also Wilson*, 2024 WL 4267923, at *3 (collecting cases); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024). "Although the Commission issued a policy statement prior to the passage of the [First Step Act] that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the [Bureau of Prisons] . . . ." *Wilson*, 2024 WL 4267923, at *3. Accordingly, the Fifth Circuit held that the policy statement was inapplicable to motions filed by defendants on their own behalf. *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021).

[1] This provision is often referred to as "compassionate release." *See Wilson*, 2024 WL 4267923, at *3 (citing *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023)).

This changed on November 1, 2023, when the amendments to the United States Sentencing Guidelines ("Guidelines") became effective. The Commission amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release. *Wilson*, 2024 WL 4267923, at *4 (citing U.S.S.G. § 1B1.13). Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling." U.S.S.G. § 1B1.13(b). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the family circumstances of the defendant; (4) whether the defendant was a victim of abuse while in custody; (5) other reasons similar in gravity to those previously described; and (6) an unusually long sentence. *Id.* § 1B1.13(b)(1)–(6). Notably, rehabilitation alone is insufficient to grant a defendant's motion for compassionate release. *Jean*, 108 F.4th at 279.

**II. Exhaustion of Administrative Remedies**

Section 3582(c)(1)(A) states that the Court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement. *Wilson*, 2024 WL 4267923, at *4 (first citing 18 U.S.C. § 3582(c)(1)(A); then citing *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021); and then *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020)).[2] That is, a defendant may not seek relief from a court before first exhausting each administrative avenue available to the defendant. *See Wilson*, 2024 WL 4267923, at *4. "Accordingly, before seeking relief from the [C]ourt, a defendant must first submit a request

[2] The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). *Wilson*, 2024 WL 4267923, at *4.

to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request." *Id.* (first citing 18 U.S.C. § 3582(c)(1)(A); then citing *Garrett*, 15 F.4th at 338).

This exhaustion requirement is a "mandatory claim-processing rule," which means a defendant may not waive it himself. *Franco*, 973 F.3d at 468; *see also United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (per curiam) (unpublished) ("Because the statutory language is mandatory . . . we must enforce this procedural rule . . . ."). However, that is not to say the exhaustion requirement can never be waived. Section 3582(c)'s exhaustion requirement is a claim-processing rule—not a jurisdictional prerequisite. *Ward v. United States*, 11 F.4th 354, 361 (5th Cir. 2021). Thus, like other claim-processing rules, "the Government must properly raise the rule before it will be enforced." *Id.* (citation modified); *see also Fort Bend County. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (citation modified) ("A claim-processing rule may be 'mandatory' in the sense that a court must enforce the rule if a party properly raises it . . . But an objection based on a mandatory claim-processing rule may be forfeited if the party asserting the rule waits too long to raise the point."). In turn, if the Government does not invoke the exhaustion requirement, the Court will deem the matter waived for the purposes of a defendant's motion under § 3582(c)(1)(A). *See Ward*, 11 F.4th at 361; *see also United States v. McLean*, No. 21-40015, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022) (finding abuse of discretion where the failure to exhaust administrative remedies was raised *sua sponte*).

## III. U.S.S.G.'s Policy Statement

### A. Defendant's medical circumstances (U.S.S.G. § 1B1.13(b)(1))

The Sentencing Commission has enumerated four separate medical circumstances to consider in evaluating a compassionate release request. U.S.S.G. §§ 1B1.13(b)(1)(A)–(D).

First, whether the defendant is "suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory)." *Id.* § 1B1.13(b)(1)(A). Although a life-expectancy prognosis is not required, the provided examples make clear how serious the illness must be: "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Fifth Circuit precedent is in accord. *See, e.g.*, *United States v. McMaryion,* No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) ("We have said that a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion."). Generic conditions like hypertension or high cholesterol are insufficient. *See, e.g.*, *United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (finding neither hypertension nor high cholesterol to be terminal conditions); *United States v. Koons*, 455 F. Supp. 3d 285, 291-92 (W.D. La. 2020) (similar, but for high cholesterol, hypertension, and acid reflux).

Second, whether the defendant is "(i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process." U.S.S.G. § 1B1.13(b)(1)(B). This condition must be so severe that it "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* When the defendant's conditions are "managed effectively by medication and do not substantially diminish the ability of the defendant to provide self-care," the defendant's medical condition is not an "extraordinary and compelling reason[] warranting compassionate release . . . ." *United States v. Love*, 853 F. App'x 986, 987 (5th Cir. 2021) (per curiam) (unpublished) (citation modified).

Third, whether the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). This subcategory focuses on the lack of resources and medical care available in some correctional facilities. Courts have found insufficient general complaints about long-term issues without medical proof of the condition or how it is deteriorating. *See, e.g.*, *United States v. Ani*, No. 21-00147, 2024 WL 50775, at *4 (D. Haw. Jan. 4, 2024) ("BOP is providing him with medical care, such as medication. There is no evidence that his medical conditions are deteriorating; that his medical conditions require long-term or specialized medical care that is not being provided and without which he is at risk of serious deterioration in health or death; or that his ability to care for himself has been seriously diminished."); *United States v. Dessaure-Outlaw*, No. CR 122-023, 2024 WL 83327, at *2 (S.D. Ga. Jan. 8, 2024) (finding general complaints about surgery complication and diabetes insufficient).

Fourth, whether the defendant is in a facility that is "at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). In addition, the defendant's "personal health risk factors and custodial status" must put them "at increased risk of suffering severe medical complications or death . . . ." *Id.* § 1B1.13(b)(1)(D)(ii). The facility must also be unable to "adequately mitigate[]" the defendant's increased risk "in a timely manner." *Id.* § 1B1.13(b)(1)(D)(iii).

Courts have repeatedly denied motions related to the COVID-19 pandemic under this section.[3] In fact, the Fifth Circuit has "repeatedly denied relief in cases where prisoners sought compassionate release due to fear of communicable disease, even when those prisoners were in poor health." *McMaryion*, 2023 WL 4118015, at *2 (citing *Thompson*, 984 F.3d at 432–34 (denying relief to a hypertensive stroke survivor concerned by COVID-19)); *see also United States v. Rodriguez*, 27 F.4th 1097, 1098–1101 (5th Cir. 2022) (denying relief where movant fearing COVID-19 suffered from heart failure). Indeed, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also Koons,* 455 F. Supp. 3d at 290 ("[A] prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements on conditions of confinement within the BOP . . . .").

Further, the increased risk from an outbreak or emergency must exist at the time relief would be granted. The Sentencing Commission drafted this section using words that convey the necessary, continuous nature of the risk—"at imminent risk of being affected," "ongoing outbreak," "ongoing public health emergency," and "increased risk of suffering." U.S.S.G. § 1B1.13(b)(1)(D). As applied to COVID-19, this is no longer the case: both international and

[3] *See, e.g.*, *United States v. Blair*, No. 5:19-CR-50058, 2023 WL 8223470, at *3 (W.D. Ark. Nov. 6, 2023) (finding the mere risk of COVID-19 infection was too speculative to serve as an extraordinary and compelling medical circumstance); *United States v. Williams*, No. GLR-97-355, 2023 WL 8019023, at *4 (D. M.D. Nov. 20, 2023) ("Hypertension and high BMI were not sufficient to warrant a prisoner's relief when the BOP facility's COVID-19 numbers were low, and the inmate did not show that he would not receive appropriate treatment if he were to contract the virus.").

domestic health authorities, including the World Health Organization,[4] the United States Centers for Disease Control and Prevention,[5] and the U.S. Federal Government,[6] have made clear that the COVID-19 pandemic has ended.[7] Thus, the COVID-19 pandemic no longer constitutes an "extraordinary and compelling reason" for compassionate release.

**B. Defendant's age (U.S.S.G. § 1B1.13(b)(2))**

There are three requirements for the defendant's age to constitute an extraordinary and compelling reason for release. First, the defendant must be "at least 65 years old." U.S.S.G. § 1B1.13(b)(2). Second, they must be "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* Third, the defendant must have "served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.*

**C. Defendant's family circumstances (U.S.S.G. § 1B1.13(b)(3))**

The Sentencing Commission enumerates four potential reasons for a defendant's family circumstances to constitute an extraordinary and compelling reason for release:

(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

---

[4] *Statement on the Fifteenth Meeting of the IHR (2005) Emergency Committee on the COVID-19 Pandemic*, WORLD HEALTH ORG. (May 5, 2023), https://www.who.int/news/item/05-05-2023-statement-on-the-fifteenth-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-coronavirus-disease-(covid-19)-pandemic [https://perma.cc/MR64-X7UV].

[5] End of the Federal COVID-19 Public Health Emergency (PHE) Declaration, Ctrs. for Disease Control & Prevention (May 5, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html#:~:text=The%20federal%20COVID-19%20PHE,share%20certain%20data%20will%20change [https://perma.cc/3S43-2VNT].

[6] *See* National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

[7] *See also United States v. Ford*, No. 1:16-CR-19, 2023 WL 3477168, at *5 (N.D. Ind. May 15, 2023) (noting that "on May 11, 2023, the federal government ended the COVID-19 Public Health Emergency based on widespread prevention and control measures like vaccination") (quotations omitted).

> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
>
> (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "***immediate family member***" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D) (emphasis added).

Conclusory assertions that the defendant must now serve as the primary caretaker for a family member are insufficient. *See, e.g.*, *United States v. Newman*, No. CR 122-031, 2024 WL 812041, at *2 (S.D. Ga. Feb. 27, 2024) (finding unsupported assertions that defendant's wife was disabled and that his father required caretaking were "conclusory statements" that were "insufficient to carry his burden of persuasion"). Rather, courts require specific evidence of the defendant's need to serve as a primary caretaker. For example, the defendant must prove with medical support that the family member is incapacitated. *See United States v. Zermeno*, No. 1:16-CR-79(1), 2024 WL 4043445, at *4 (E.D. Tex. Sept. 3, 2024) (collecting cases); *United States v. Romano*, 707 F. Supp. 3d 233, 237–38 (E.D.N.Y. 2023) ("Without medical evidence [of the] father's incapacitation and medical evidence detailing [defendant's] mother's inability to provide his father the necessary assistance, the Court cannot conclude that [the mother] would be an inadequate caregiver."). Statements that a family member is elderly and needs care are insufficient. *Romano*, 707 F. Supp. 3d at 237–38. The defendant must also demonstrate why they are the only available caregiver for that family member. *United States v. Lopez*, No. 23-50404, 2024

WL 244935, at *1 (5th Cir. Jan. 23, 2024) (noting that the defendant "failed to explain why his other siblings could not care for his parents"). There must be a reason for the change in that family member's caretaker status. *Id.* (noting the defendant's failure to "allege the death or incapacitation of any current caretaker").

When the caretaking role relates to minors like children, additional requirements apply. For instance, the defendant must show that they would likely gain custody of the child if released. *See, e.g.*, *Zermeno*, 2024 WL 4043445, at *5 (collecting cases). In such a situation, the court should evaluate whether "release of the inmate to care for the inmate's child is the best interest of the child." U.S. Dep't of Just., Fed. Bureau of Prisons, Program Statement 5050.50 (Jan. 17, 2019).

**D. Victim of abuse (U.S.S.G. § 1B1.13(b)(4))**

Under this section, the defendant must establish that, while in custody, they were a victim of (1) "sexual abuse involving a 'sexual act,' as defined in 18 U.S.C. § 2246(2)"; or (2) "physical abuse resulting in 'serious bodily injury,' as defined in the Commentary to §1B1.1." U.S.S.G. §§ 1B1.13(b)(4)(A)–(B). The abuse must have been inflicted by either a correctional officer, employee, or contractor of the BOP, or "any other individual who had custody or control over the defendant." *Id.* § 1B1.13(b)(4). Finally, the alleged misconduct "must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding . . . ." *Id.* But if such proceedings are unduly delayed or the defendant faces imminent danger, a formal adjudication is unnecessary. *Id.*

**E. Other reasons (U.S.S.G. § 1B1.13(b)(5))**

The "other reasons" category is a catchall that allows the defendant to "present[] any other circumstance or combination of circumstances" that is "similar in gravity to" the four extraordinary and compelling reasons described in U.S.S.G. §§ 1B1.13(b)(1)–(4). *Id.*

§ 1B1.13(b)(5). Although some courts invoked this provision to grant COVID-19-related compassionate release motions, this reasoning no longer applies because the pandemic is over. *See supra* notes 4–7 and accompanying text.

**F. Unusually long sentences (U.S.S.G. § 1B1.13(b)(6))**

A defendant must meet three requirements under this section. First, the defendant must be serving an unusually long sentence. *See* U.S.S.G. § 1B1.13(b)(6). Second, they must have served at least ten years of that sentence. *Id.* Third, there must have been a change in law that "produce[s] a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *Id.* This section explicitly excludes non-retroactive changes "to the Guidelines Manual." *Id.* And Fifth Circuit precedent precludes considering non-retroactive changes in *any* law. *United States v. Austin*, No. 24-30039, 2025 WL 78706, at *3 (5th Cir. Jan. 13, 2025) ("A non-retroactive change in the law cannot constitute an extraordinary and compelling reason justifying sentence reduction under § 3582(c)(1)."). Thus, in this circuit, non-retroactive changes are irrelevant.

## IV. The 18 U.S.C. § 3553(a) Factors

Section 3553(a) directs courts to consider the following factors: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines provisions and policy statements; any pertinent policy statement of the United States Sentencing

Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. *Wilson*, 2024 WL 4267923, at *3 n.7 (citing 18 U.S.C. § 3553(a)).

Importantly, the district court has broad discretion in considering these factors. As the Supreme Court has explained, "the 'sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case . . . .'" *United States v. Rollins*, 53 F.4th 353, 359 (5th Cir. 2022) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Consistent with the broad discretion granted district courts, the Fifth Circuit has "regularly affirmed the denial of a compassionate-release motion . . . where the district court's weighing of the Section 3553(a) factors can independently support its judgment." *Id.* at 358 (citation omitted). In short, "compassionate release is discretionary, not mandatory, and could be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020).

## V. The Defendant's Burden

In sum, when seeking compassionate release on their own motion, the defendant must demonstrate that: (1) the defendant exhausted administrative remedies; (2) "extraordinary and compelling reasons" justify the defendant's sentence reduction or the defendant satisfies the requirements of § 3582(c)(1)(A)(ii);[8] (3) the reduction is consistent with the policy statement of U.S.S.G. § 1B1.13; and (4) the court should exercise its discretion to grant the motion after considering the § 3553(a) factors. *Wilson*, 2024 WL 4267923, at *4 (citing *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *Shkambi*, 993 F.3d at 392; *Rollins*, 53 F.4th at 358.

[8] 18 U.S.C. § 3582(c)(1)(A)(ii) states that "the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g)."

## ANALYSIS

### I. The Exhaustion Requirement

Before seeking relief from the Court, Defendant is bound by a threshold requirement to exhaust administrative remedies by submitting a request to the warden to move for compassionate release on their behalf, or by waiver following a "lapse of 30 days" after a request to the warden has been made. *Wilson*, 2024 WL 4267923, at *4 (citing 18 U.S.C. § 3582(c)(1)(A)). However, as indicated above, the Court will deem the matter waived if the Government fails to properly raise it as a defense. *See Ward*, 11 F.4th at 361.

Defendant applied for a Reduction in Sentence on December 15, 2025, which was ultimately denied by the warden (Dkt. #318-1 at p. 12). Plaintiff filed his Motion in full observance of the 30-day statutory window (Dkt. #318-1 at p. 12). As a result, Defendant has successfully exhausted his administrative remedies. *United States v. Garrett*, 15 F.4th 335, 339 (5th Cir. 2021) ("Section 3582(c)(1)(A) grants to the inmate the choice to take either of the two paths it provides. Once 30 days has 'lapse[d] . . . from the receipt of such a request by the warden,' the prisoner may file his motion in the district court. § 3582(c)(1)(A). That is so irrespective of whether the BOP has responded to the request or whether the inmate has administrative appeals available to him.").

### II. The "Extraordinary and Compelling Reasons" Requirement

To show that "extraordinary and compelling" reasons warrant a sentence reduction, the Court examines whether reduction is consistent with the amended policy statement of U.S.S.G. § 1B1.13. Defendant's Motion implicates § 1B1.13(b)(1), as it relies exclusively on his current medical condition and multiple 18 U.S.C. § 3553(a) factors to argue the basis for his early release (Dkt. #318-1 at pp. 7–10).

U.S.S.G. § 1B1.13(b)(1)(A) identifies an "extraordinary and compelling" reason as one involving a "terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory)." In this case, Defendant has been diagnosed with liver cirrhosis, iron deficiency anemia, syncope, hypertension, a history of nephrectomy, esophageal varices, and an unidentified liver mass (Dkt. #318-1 at p. 12). As noted above, Defendant's medical providers once estimated that his life expectancy was less than 18 months (Dkt. #318-1 at p. 11). Because Defendant's liver cirrhosis is "a serious and advanced illness with an end-of-life trajectory," it satisfies the definition of a "terminal illness" under U.S.S.G. § 1B1.13(b)(1)(A). As applied to Fifth Circuit precedent, Defendant's terminal illness weighs in favor of compassionate release. *See, e.g.*, *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) (stating that "a late-stage, terminal prognosis can constitute an extraordinary and compelling basis for a § 3582(c)(1) motion.").[9]

The warden's written denial of Defendant's compassionate release application provides a closer look at the state of Defendant's health. In that notice, the BOP indicated that while Defendant is "receiving medical treatment in accordance with evidence based standards," Defendant nevertheless "meet[s] the medical criteria for consideration based on [his] medical conditions" (Dkt. #318-1 at p. 12). At the end of the denial notice, the BOP claimed that it declined

---

[9] Defendant's prognosis also arguably implicates U.S.S.G. § 1B1.13(b)(1)(B)(i), which pertains to "a serious physical or medical condition," and § 1B1.13(b)(1)(C), which applies where a "defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." Neither statutory provision was expressly listed as an "extraordinary and compelling reason" to grant compassionate release by Defendant, but the Court has nevertheless considered their application in its analysis. "Prisoners . . . still must show 'extraordinary reasons'; they still must show that compassionate release is consistent with applicable policy statements from the Commission; and they still must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors." *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).

to favor any sentence reduction based on Defendant's "active ICE detainer" (Dkt. #318-1 at p. 12). However, the presence of an ICE detainer does not prevent compassionate release, as deserving defendants may be released directly into ICE custody. *See, e.g.*, *United States v. Bravo-Ziranda*, No. 3:18-CR-00415-K-1, 2023 WL 4494348, at *6 (N.D. Tex. July 10, 2023) ("The Court grants Bravo-Ziranda's compassionate release motions and orders that he be released to ICE custody pursuant to a detainer." (internal citations omitted)); *United States v. Pompey*, No. CR 97-0638 RB, 2020 WL 3972735, at *5 (D.N.M. July 14, 2020) (granting motion for compassionate release based on an extraordinary and compelling medical issue during COVID-19 and releasing defendant to ICE custody). Thus, the presence of an ICE detainer does not undermine this Court's finding that Plaintiff has carried his burden to indicate the existence of a "extraordinary and compelling" reason for compassionate release.

## III. The § 3553(a) Factors

Although the Court finds that an "extraordinary and compelling" reason exists in this case, the Court must still evaluate the 18 U.S.C. § 3553(a) factors to determine whether the identified reason warrants a discretionary sentence reduction under the circumstances. *Chambliss*, 948 F.3d at 693 (5th Cir. 2020) ("[T]he district court must provide specific factual reasons, including but not limited to due consideration of the § 3553(a) factors, for its decision."). Under § 3553(a), courts are asked to address a variety of factors, including the seriousness of the offense and the history and characteristics of the defendant; the need to deter criminal conduct, promote respect for the law, and provide just punishment while avoiding sentence disparities; the need to protect the public; and the need to provide necessary medical care. *United States v. Shaw*, No. 4:15-CR-134-03, 2025 WL 2496156, at *11 (E.D. Tex. Aug. 29, 2025) (citing *Bravo-Ziranda*, 2023 WL 4494348, at *5). As applied to the facts of this case, the sentencing factors under 18 U.S.C. § 3553(a) do not

support Defendant's early release, notwithstanding his "extraordinary and compelling" medical issue.

First, the nature and circumstances of Defendant's offense, along with his history and characteristics, weigh against his early release. Defendant, a Colombian pilot and drug trafficker, was personally associated with the trafficking of hundreds of kilograms of cocaine from Columbia to Central America and further assisted drug trafficking organizations with locating and inspecting clandestine airfields for drug transportation. Defendant pleaded guilty to Conspiracy to Manufacture and Distribute Cocaine Intending, Knowing and with Reasonable Cause to Believe that the Cocaine will be Unlawfully Imported into the United States in violation of 21 U.S.C. § 963 (Dkt. #83). Defendant has since served seven years of his nine-year sentence in a correctional facility, and while he takes responsibility for his actions and is currently assessed at a Minimum-Risk Recidivism Level by the BOP, such action is insufficient to weigh in his favor against his conviction for "serious drug offenses involving large quantities" of cocaine. *United States v. White*, No. CR 16-40, 2021 WL 1721016, at *5 (E.D. La. Apr. 30, 2021).

Second, the Court must consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, which similarly weighs against Defendant's early release. Central to this analysis is the Court's previous issuance of an Order Regarding Motion for Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(2) (Dkt. #316). As indicated above, that opinion recognized a relevant change in law and reduced Defendant's sentence by over two years—dropping it from 135 to 108 months. To grant an additional sentence reduction at this time would not only undermine the sentencing process at large, but would also fail to reflect the seriousness of large-scale drug trafficking and its

dangerous consequences. Such a ruling would erode respect for the law and drug enforcement, and further risks emboldening others to engage in similar conduct within and beyond the borders of the United States "if lengthy sentences can routinely be reduced by granting motions for compassionate release." *United States v. Hernandez Araujo*, No. 4:18-CR-144-ALM-AGD-4, 2026 WL 1279850, at *8 (E.D. Tex. May 11, 2026). Although Defendant has already served a majority of his term of imprisonment, the Court finds that Defendant's current sentence is fair and reasonable considering his receipt of a prior reduction. *See United States v. Caulfield*, 647 F. App'x 293, 295–96 (5th Cir. 2016) (affirming district court's denial of compassionate release over a defendant's complaint that he had "not had a single prison infraction of any kind in nearly eight years" in part because the defendant had "benefitted from a prior reduction" and "a further sentence reduction was unwarranted"); *United States v. Carmenate*, No. CR M-07-1217-2, 2017 WL 9534732, at *2 (S.D. Tex. Aug. 23, 2017) ("This Court has already reduced Defendant's sentence."), *report and recommendation adopted*, No. 7:07-CR-1217-2, 2017 WL 9534731 (S.D. Tex. Oct. 20, 2017).

Third, the Court must assess the need to protect the public. Defendant is less than 65 years old and is currently operating independently and physically working at his correctional facility. These facts, together with Defendant's active prior participation in organized drug trafficking, weigh against a finding that Defendant does not pose a threat to the community. *See United States v. Duke*, No. 3:20-CR-193-K (1), 2020 WL 5211066, at *2 (N.D. Tex. Aug. 31, 2020) ("As Congress and the Court have recognized, drug trafficking poses a significant danger to the community."). However, the Court's analysis cannot end there. As noted above, Defendant has been classified by the BOP as a minimum-risk prisoner. Based on the life expectancy projections

offered by Defendant, he will be released to his family well within his lifetime, but is not expected to live much longer outside of confinement. Defendant's degenerative prognosis, together with his expected release to ICE custody, suggests that he will not pose a threat to the community. *See United States v. Francisco-Ovalle*, No. 18-CR-526 (AJN), 2022 WL 1094730, at *3 (S.D.N.Y. Apr. 12, 2022) (determining defendant was not a danger to the public based on the ICE detainer lodged against him). As a result, this factor weighs in favor of granting compassionate release.

Finally, the Court must consider the need to provide Defendant with necessary medical care in the most effective manner. In this context, the Court turns to address Defendant's 18-month prognosis calculation (Dkt. #318 at p. 2). Again, Defendant himself believes that "[w]ith proper care I may extend my life by 6 to 12 months more" (Dkt. #318 at p. 5). Rather than seek such "proper care" within the walls of his correctional facility, Defendant asks the Court for permission to freely seek it in the nation of Columbia, as he claims that "[i]n my country my family will make sure I have this care" (Dkt. #318 at p. 5). To that end, he has attached letters to his Motion which indicate that he "has an active insurance policy [which] ensures proper medical care back home" (Dkt. #318-1 at pp. 20–21). From within the walls of his correctional facility, however, BOP records indicate that Defendant underwent a medical examination as recently as December 18, 2025, and that he remains independent regarding self-care in the correctional facility. Defendant's health issues have not gone unnoticed, and he has been classified as Medical Care Level 3, which identifies his condition as unstable and suggests that he requires complex chronic care. Examples of such care include his assignment to a bottom bunk and the application of a medical restriction to his regular work duties, which he continues to perform to this day. These facts suggest that Defendant is currently receiving "proper care" at his correctional facility. While

his Columbian insurance policies may also assist him in receiving "proper care," this alone is not enough to support Defendant's early release under this factor.

After considering the factors listed in 18 U.S.C. § 3553(a), the Court concludes that they weigh in favor of denying Defendant's Motion. Although Defendant has identified an extraordinary and compelling reason for a sentence reduction, he has not succeeded under § 3553(a) in obtaining compassionate release through the exercise of the Court's discretion.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Pro Se Motion for Compassionate Release (Dkt. #318) is hereby **DENIED**.

**IT IS SO ORDERED**.

**SIGNED this 13th day of August, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE